OPINION
{¶ 1} Plaintiff-appellant, Kathleen Gibbons-Barry, appeals from the judgment of the Franklin County Court of Common Pleas granting summary judgment to defendant-appellee, The Cincinnati Insurance Companies. For the following reasons, we affirm.
{¶ 2} On October 17, 1998, appellant's husband, Mohamed Barry, was fatally injured in an automobile accident in the Ivory Coast of Africa. The identity of the individual who struck Mr. Barry's vehicle is unknown. On October 17, 2000, appellant brought suit against the unknown driver, The Cincinnati Insurance Companies, Progressive Insurance and a number of John Doe defendant insurance companies. In her complaint, appellant asserted that the driver who struck her husband's vehicle was either uninsured or underinsured, and that the insurance-company defendants failed to provide coverage under the uninsured or underinsured motorist provisions of the various policies for damages associated with her husband's wrongful death.
{¶ 3} During the pendency of the lawsuit, Progressive Insurance settled with appellant. Appellee, who provided both automobile and homeowner's insurance to appellant, moved for summary judgment. In support of its motion for summary judgment, appellee first argued that appellant was not entitled to any coverage under the automobile policy because Mr. Barry's accident occurred outside of the geographical area specified in the policy as the "policy territory." Appellee also argued that appellant was not entitled to uninsured or underinsured motorist coverage under the homeowner's policy. The trial court granted appellee's motion for summary judgment in its entirety, and appellant appealed that decision to this court.
{¶ 4} On appeal, appellant assigns the following error:
{¶ 5} "The trial court erred in granting defendant-appellee's motion for summary judgment."
{¶ 6} Appellate review of summary judgment motions is de novo. Helton v. Scioto Cty. Bd. Of Commrs. (1997), 123 Ohio App.3d 158, 162. "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." Mergenthal v. Star Banc Corp. (1997),122 Ohio App.3d 100, 103. Civ.R. 56(C) provides that summary judgment may be granted when the moving party demonstrates that: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. State ex rel. Grady v. State Emp. Relations Bd. (1997), 78 Ohio St.3d 181, 183.
{¶ 7} By her single assignment of error, appellant advances two arguments. In the first, appellant maintains that the trial court erred when it concluded that the geographical limitation provision in appellant's automobile policy prevented appellant from recovering under that policy. The geographical limitation provision reads:
{¶ 8} "POLICY PERIOD AND TERRITORY
{¶ 9} "This policy applies only to accidents and losses which occur:
{¶ 10} "1. During the policy period as shown in the Declarations; and
{¶ 11} "2. Within the policy territory.
{¶ 12} "The policy territory is:
{¶ 13} "1. The United States of America, its territories or possessions;
{¶ 14} "2. Puerto Rico; or
{¶ 15} "3. Canada."
{¶ 16} Appellant does not challenge the validity of the geographical limitation provision but, instead, argues that the provision is inapplicable because the "losses" associated with her husband's accident occurred in the United States. Neither "accident" nor "loss" is defined by the policy. Citing Black's Law Dictionary, appellant asserts that "loss" must be defined as "[t]he amount of financial detriment caused by an insured person's death or an insured's property damage, for which the insurer becomes liable." Although appellant acknowledges that her husband's accident occurred outside the geographical territory as defined by the policy, she argues that her "losses" are covered by the policy because she suffered financial detriment caused by her husband's death while residing in the United States. We disagree with appellant's interpretation of the geographical limitation provision.
{¶ 17} When the language in an insurance policy is clear and unambiguous, courts must enforce the policy as it is written and imbue the words of the policy with their plain and ordinary meaning. Cincinnati Indemn. Co. v. Martin (1999), 85 Ohio St.3d 604, 607. Pursuant to this basic rule of contract construction, courts will not modify an insurance policy by ascribing finely drawn connotations to simple terms or by disregarding the simplicity or plainness of the terms used. Heiney v. The Hartford, Franklin App. No. 01AP-1100, 2002-Ohio-3718, at ¶ 45.
{¶ 18} Contrary to appellant's argument, interpretation of the geographical limitation provision does not turn on the definition of "losses" but, instead, on the word "and." The word "and" is defined as meaning "[a] particle which expresses the relation of connection or addition." Webster's Revised Unabridged Dictionary (1996). Consistent with this definition, the word "and" is usually interpreted in the conjunctive. See Clagg v. Baycliffs Corp. (1998), 82 Ohio St.3d 277, 280
(discussing the application of a statutory rule of construction).
{¶ 19} Interpreting the phrase "accidents and losses" with the plain, ordinary meaning of the word "and," we conclude that the geographical limitation provision means that the policy will not apply unless both Mr. Barry's accident and the losses associated with his accident occurred in the geographical territory. Appellant's argument for coverage under the policy interprets the geographical limitation provision as if it was written instead as "accidents or losses." However, as this provision is clear and unambiguous when "and" is interpreted in the conjunctive, we do not adopt appellant's interpretation of the provision. Accordingly, because Mr. Barry's accident occurred outside the policy territory, appellant is not entitled to damages under the automobile policy.
{¶ 20} In appellant's second argument, she maintains that the limited liability coverage for a "residence employee" contained in her homeowner's insurance policy renders the policy an automobile insurance policy. Appellant further asserts that appellee's failure to offer uninsured and underinsured motorist coverage as part of her homeowner's policy means that the coverage arises by operation of law. Therefore, appellant concludes that she can recover for damages associated with her husband's wrongful death pursuant to her homeowner's policy.
{¶ 21} The statutory law governing uninsured and underinsured motorist coverage has undergone a series of amendments in recent years. Therefore, we must first determine what version of the statutory law applies in order to determine the parties' rights and duties pursuant to the homeowner's policy.
{¶ 22} The scope of the uninsured and underinsured motorist coverage under the policy is defined by the statutory law in effect at the time the parties initially contracted or at the time the policy was renewed. Ross v. Farmers Ins. Group of Cols. (1998), 82 Ohio St.3d 281. If a renewal has occurred, "[s]tatutes pertaining to a policy of insurance and its coverage, which are enacted after the policy's issuance, are incorporated into any renewal of such policy if the renewal represents a new contract of insurance separate from the initial policy." Benson v. Rosler (1985), 19 Ohio St.3d 41, 44, overruled in part on other grounds; Wolfe v. Wolfe (2000), 88 Ohio St.3d 246, 251-252.
{¶ 23} The exercise of an option to renew a contract results in the creation of a new contract. Dixon v. Professional Staff Mgmt., Franklin App. No. 01AP-1332, 2002-Ohio-4493, at ¶ 25; Medical Life Ins. Co. v. Lamar (Jan. 9, 2001), Franklin App. No. 00AP-201. A contract containing a renewal option is only valid for the term specified in the contract and, upon the end of that specified term, the parties may exercise the option to create a new contract. State ex rel. Preston v. Ferguson (1960), 170 Ohio St. 450, 457-458. On the other hand, the exercise of an option to extend a contract does not result in a new contract. Id. Rather, once the option is exercised, the original contract is valid for both the initial contract term and an additional term. Id.
{¶ 24} A contract must clearly indicate that the parties intend the contract to be subject to an option for renewal. Lamar, supra. Otherwise, courts will interpret the contract as providing only for an extension. Id.
{¶ 25} Notably, within the above analysis, we decline to apply the analytical approach outlined in Wolfe. In the Wolfe decision, the Ohio Supreme Court applied R.C. 3937.31(A) to determine when a "new" automobile insurance policy was issued in order to ascertain the version of the statutory law that applied to the policy. R.C. 3937.31(A) states that "[e]very automobile insurance policy shall be issued for a period of not less than two years." Thus, the court concluded that, in order to determine when a "new" automobile insurance policy is issued, the initial issuance date of the policy must be ascertained and successive two-year periods must be added to that date to reach the last guaranteed policy period. Whatever statutory law was in effect at the beginning of the last guaranteed policy period is the applicable law.
{¶ 26} As we recently explained in Dixon, supra, at ¶ 22-23, we decline to apply Wolfe to determine the policy period of insurance policies that are, in essence, homeowner's policies, not automobile policies. As we explained above, the determination of the appropriate statutory law hinges upon the date a "new" or renewal policy was enacted. When conducting the initial analysis of a policy to determine when a "new" or renewal contract was entered into by the parties, we deem it inappropriate to unilaterally presume all policies are ultimately automobile policies with policy periods dictated by R.C. 3937.31(A) and Wolfe. Rather, if, as here, the policy is on its face a homeowner's policy, the analysis of when a "new" or renewal contract was entered into must be conducted pursuant to general principles of contract interpretation.
{¶ 27} Applying these general principles, we conclude that the parties' August 11, 1998 renewal policy is a "new" contract. The declaration page attached to the homeowner's policy specifies that the policy is a "renewal," with a policy period from August 11, 1998 to August 11, 2001. Further, the policy specifies in "Section I and Section II — Conditions," that "[w]e may elect not to renew this policy." These provisions indicate an intent that the homeowner's policy be renewed, not extended, upon option of the parties. Therefore, because the August 11, 1998 policy is a "new" contract, it incorporates the statutory law as it existed on August 11, 1998.
{¶ 28} As we have determined the applicable statutory law, we can now address the issue at the heart of appellant's argument: whether the homeowner's policy is a motor vehicle liability insurance policy for the purpose of imposing uninsured and underinsured motorist coverage. Effective September 3, 1997, H.B. No. 261 amended R.C. 3937.18 to add subsection (L), which defines an "automobile liability or motor vehicle liability policy of insurance" for purposes of the uninsured and underinsured motorist coverage statute. As this statutory definition was incorporated into the August 1998 homeowner's policy, we must apply it to the policy language to determine whether appellant is entitled to uninsured or underinsured motorist coverage. Consequently, appellant's reliance upon such cases as Lemm v. The Hartford (Oct. 4, 2001), Franklin App. No. 01AP-251, Selander v. Erie Ins. Group (1999), 85 Ohio St.3d 541, and Davidson v. Motorists Mut. Ins. Co. (2001), 91 Ohio St.3d 262, is misplaced, as H.B. No. 261 superseded this case law. See Uzhca v. Derham, Montgomery App. No. 19106, 2002-Ohio-1814, at ¶ 57; Burkholder v. German Mut. Ins. Co., Lucas App. No. L-01-1413, 2002-Ohio-1184, at ¶ 14; Pickett v. Ohio Farmers Ins. Co., Stark App. No. 2001CA00227, 2002-Ohio-259. Although Lemm also involved a homeowner's policy, it did not involve an assessment of whether a homeowner's policy could qualify as an automobile liability policy under the statutory law enacted by H.B. No. 261. Therefore, the issue before the court in Lemm was different from that which confronts this court in the case sub judice.
{¶ 29} Pursuant to the version of R.C. 3937.18 enacted by H.B. No. 261, "automobile liability or motor vehicle liability policy of insurance" was defined as:
{¶ 30} "(1) Any policy of insurance that serves as proof of financial responsibility, as proof of financial responsibility is defined by division (K) of Section 4509.01, for owners or operators of the motor vehicles specifically identified in the policy of insurance;
{¶ 31} "(2) Any umbrella liability policy of insurance."
{¶ 32} Appellant does not argue that the homeowner's policy is an umbrella liability policy of insurance, but she does argue that the homeowner's policy could serve as proof of financial responsibility. To support her argument, appellant relies upon the following policy language:
{¶ 33} "1. Coverage E — Bodily Injury, Personal Injury and Property Damage Liability and Coverage F — Medical Payments to Others do not apply to bodily injury, personal injury, or property damage:
{¶ 34} "* * *
{¶ 35} "f. arising out of:
{¶ 36} "(1) the ownership, maintenance, use, loading or unloading of motor vehicles or all other motorized land conveyances, including trailers, owned or operated by or rented or loaned to an insured;
{¶ 37} "* * *
{¶ 38} "Exclusions e., f., g., and h. do not apply to bodily injury and personal injury to a residence employee arising out of and in the course of the residence employee's employment by an insured." Appellant argues that the homeowner's policy can serve as "proof of financial responsibility" because the "residence employee" exception provides certain, limited liability coverage. Appellant also argues that policy "specifically identifies" the effected motor vehicles as those "owned or operated by or rented or loaned to an insured." Therefore, appellant concludes that the homeowner's policy is an "automobile liability or motor vehicle liability policy of insurance" as defined in R.C. 3937.18(L)(1). We disagree with appellant's argument.
{¶ 39} First, the August 1998 policy cannot serve as "proof of financial responsibility." Pursuant to R.C. 4509.01(K), "proof of financial responsibility" is defined as:
{¶ 40} "* * * [P]roof of ability to respond in damages for liability, on account of accidents occurring subsequent to the effective date of such proof, arising out of the ownership, maintenance, or use of a motor vehicle in the amount of twelve thousand five hundred dollars because of bodily injury to or death of one person in any one accident, in the amount of twenty-five thousand dollars because of bodily injury to or death of two or more persons in any one accident, and in the amount of seven thousand five hundred dollars because of injury to property of others in any one accident."
{¶ 41} Here, the minimal coverage offered under the homeowner's policy does not rise to the level of "proof of financial responsibility" because it is extended to only one person — appellant's "residence employee." Thus, the policy fails to provide any liability coverage if "two or more persons" are injured or die in an accident, much less coverage for the two or more persons in the amount of $25,000. Further, the policy fails to provide any liability coverage for property damage from any motor vehicle accident, whether or not a "residence employee" is involved.
{¶ 42} Moreover, the homeowner's policy fails to fulfill the purpose for which "proof of financial responsibility" is required in the first place. Instead of "minimiz[ing] those situations in which persons are not compensated for injuries and damages sustained in motor vehicle accidents," reliance on a homeowner's policy with a "residence employee" exception as "proof of financial responsibility" would only provide coverage to a select group of persons and little or no coverage for damages resulting from vehicular accidents. R.C. 4509.101(J). Therefore, the homeowner's policy cannot serve as "proof of financial responsibility."
{¶ 43} Second, the homeowner's policy is not an "automobile liability or motor vehicle liability policy of insurance" because neither the declarations page nor the policy itself "specifically identifies" any motor vehicles. In order to be "specifically identified," the motor vehicles referred to in the policy "must be precisely, particularly and individually identified." Burkholder, supra, at ¶ 21. However, the policy at issue here identifies the effected motor vehicles only as those "owned or operated by or rented or loaned to an insured." As we recently held in our decision in Dixon, such a general description does not satisfy the requirement of R.C. 3937.18(L)(1) that the motor vehicles be "specifically identified." Dixon, supra, at ¶ 33. See, also, Lane v. State Auto Ins. Cos., Miami App. No. 2001-CA-59, 2002-Ohio-2698, at ¶ 9-13 (similarly worded "residence employee" exception in a homeowner's policy did not provide the degree of identification necessary for the court to determine the motor vehicles were "specifically identified"); Burkholder, supra, at ¶ 21 (same); Jones v. Nationwide Ins. Co. (July 23, 2001), Stark App. No. 2000CA00329 (same). Further, as we noted in our decision in Dixon, supra, at ¶ 34, we are not guided in our analysis of this question by the dicta in Davis v. State Farm Fire Cas. Co. (Dec. 18, 2001), Franklin App. No. 00AP-1458, in which we suggested that R.C. 3937.18(L)(1) did not require the makes, models and serial numbers of motor vehicles.
{¶ 44} Because the homeowner's policy is not an "automobile liability or motor vehicle liability policy of insurance" as defined in R.C. 3937.18(L), appellee was not required to offer uninsured or underinsured motorist coverage as part of the policy and such coverage does not arise by operation of law. Therefore, appellant is not entitled to recover for damages due to her husband's alleged wrongful death under her homeowner's policy.
{¶ 45} For the foregoing reasons, we overrule appellant's assignment of error and affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
BOWMAN, J., concurs.
TYACK, P.J., concurs separately in part and dissents in part.