JOURNAL ENTRY AND OPINION
{¶ 1} The City of Cleveland ("The City") appeals from an order terminating the closure of a gentlemen's club known as "Plush 2000." The City claims that R.C. 3767.06(A) mandates a one-year closure of the premises from the date the court issued a permanent injunction. We reverse and remand.
 {¶ 2} The record reveals that in early May 2002, Cleveland Police arrested George Cornell and his daughter Yolanda Mitchell, owners of a gentlemen's club known as "Plush 2000," for operating a bottle club, selling alcohol without a permit, and public gaming. Both were tried and convicted, and their individual appeals are currently pending before this court as CA 84257 and CA 84258.
 {¶ 3} Shortly after their arrest, the City filed a petition for injunctive relief and a motion for temporary restraining order, seeking to board and secure the premises. In late May 2002, the court granted a preliminary injunction.
 {¶ 4} Following a modification of the original order in January of 2004, the City moved for summary judgment and for a permanent injunction. The court granted the City's motion in April 2004 finding causes of action for nuisance in violation of R.C. 3767.01(C)(2), lewd behavior and assignation, R.C. 3767.01(C)(3), illegal distribution of intoxicating liquors on the premises, and R.C. 2915.04, public gaming, and issued a permanent injunction. However, the court simultaneously found that since the property had been closed since the issuance of the temporary restraining order on May 13, 2002, the one-year period for a permanent injunction had lapsed, and the property was ordered returned to Cornell and Mitchell.
 {¶ 5} The City moved to stay the order and moved for reconsideration. The court denied both motions and the city appeals in a single assignment of error which states:
"The trial court erred by failing to close 14210 Miles road,Cleveland, Ohio for one year starting on April 29, 2004 — the day itissued the permanent injunction. R.C. 3767.06(A) mandates a one-yearclosure from the date the trial court issues the permanent injunctioneven if the premises was closed by court order before the permanentinjunction was issued."
 {¶ 6} When reviewing a trial court's statutory interpretation, an appellate court employs the de novo review. See Akron v. Frazier (2001),142 Ohio App.3d 718, 721. The plain language of R.C. 3767.06(A) provides that if the trial court determines that a nuisance exists, the court "shall continue for one year any closing order issued at the time of granting the temporary injunction."
 {¶ 7} In interpreting this language, the trial court found the existence of a nuisance, which Cornell does not challenge, but additionally found that a strict statutory interpretation provided that the club be closed for a maximum of one year. The City, however, claims that the year long closure of a premises begins with the grant of a permanent injunction, not from the original date of closure and asserts that the trial court's interpretation of State ex rel. Rezcallah (1998),84 Ohio St.3d 116, is misplaced.
 {¶ 8} In Rezcallah, supra, the Ohio Supreme Court invalidated the closure provision of R.C. 3767.06(A) but addressed the provision only as it related to property owners who did not participate or acquiesce in the nuisance. The court in Cincinnati ex rel. Cosgrove v. Grogan (2001),141 Ohio App.3d 733 also addressed the issue of closure and found that once ordered, the nuisance abatement statutes limit the closure to a one year period. Both cases, however, are distinct from the case at hand.Grogan, supra, involved a defendant whose bar was closed due to numerous drug transactions taking place on the premises. The owner consistently maintained that despite the numerous arrests at the bar and the pervasive smell of marijuana throughout the premises, his bar was a nice, quiet place where no one knew of the occurrence of any felony drug transactions. He maintained that since the City failed to prove his participation in the felony drug cases, it was prohibited from closing the bar. In the instant case, Cornell does not dispute the finding of a nuisance, nor does he protest his knowledge and/or role in the creation or acquiescence of the nuisance. While both Rezcallah and Grogan
specifically address a Fifth Amendment taking of property, both cases involve an innocent owner or one who maintains a lack of proof of participation in the nuisance-a situation dissimilar to the case at hand.
 {¶ 9} More appropriately, the court in State ex rel. Rothal v. Smith
(2002), 151 Ohio App.3d 289, 2002-Ohio-7328, recently addressed the maximum length of a closing order, and found that, "In reviewing R.C.3767.06(A), it directs the trial court to `continue for one year any closing order' previously issued. This language is unambiguous; it clearly provides that any prior closing order shall be continued for one year. No where in the statute does it provide that the maximum length of a closing order, regardless of its inception, must not exceed one year."
 {¶ 10} We find no indication in the language of the statute that the total closure of a premises is limited to a one year maximum period, but rather the statute specifically states that the closure may be continued for one year.
 {¶ 11} The City's sole assignment of error has merit. Accordingly, we reverse the decision of the trial court and remand for further proceedings consistent with this opinion.
It is ordered that the appellant recover from appellee costs herein taxed.
The Court finds that there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Rocco, J., concurs.
 Blackmon, A.J., dissents (see separate dissenting opinion attached).
 DISSENTING OPINION