STATE ex rel. TEAMSTERS LOCAL UNION NO. 436 et al., Appellees,

v.

BOARD OF COUNTY COMMISSIONERS, CUYAHOGA COUNTY, Appellant.

[Cite as *State ex rel. Teamsters Local Union No. 436 v. Cuyahoga Cty. Bd. of Commrs.*, 194 Ohio App.3d 258, 2011-Ohio-820.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 94703.

Decided Feb. 24, 2011.

Mangano Law Offices Co., L.P.A., Basil William Mangano, and Joseph J. Guarino III, for appellees.

William D. Mason, Cuyahoga County Prosecuting Attorney, and Dale F. Pelsozy, Assistant Prosecuting Attorney, for appellant.

LARRY A. JONES, Judge.

{¶ 1} Respondent-appellant, the Board of County Commissioners of Cuyahoga County, Ohio ("BOCC"), appeals from the trial court's decision to grant declaratory judgment in favor of relators-appellees, Teamsters Local Union No. 436 et al. Finding no merit to the appeal, we affirm.

{¶ 2} In November 2008, the BOCC passed a resolution authorizing eligible county employees to participate in an employee retirement-incentive plan ("ERIP") in an effort to combat budgetary concerns. As written, the ERIP excluded only one county agency, the Sanitary Engineering Division ("SED"). The SED is a subdivision of the BOCC, created and maintained by the BOCC as an operating division of the County Engineer's Office. But the BOCC created a separate employing unit called the "BOCC, excluding the SED" specially for the ERIP.

{¶ 3} Pursuant to the ERIP's grievance procedure, SED employees filed a grievance challenging the BOCC's decision to exclude the SED from participation in the ERIP. The county administrator held a hearing on the grievance and subsequently issued a decision denying the grievance request and concluding that the SED would not be allowed to participate in the ERIP.

{¶ 4} In December 2009, the relators filed the following actions in Cuyahoga County Common Pleas Court. First, the relators filed for preliminary and permanent injunctive relief against the BOCC. The relators also filed a taxpayer action pursuant to R.C. 309.13, seeking to force the BOCC to include SED employees in ERIP. The relators filed for declaratory judgment, seeking a declaration that the BOCC violated R.C. 145.297 when it authorized an ERIP for the employing unit of the BOCC but excluded SED employees from the group of employees permitted to participate in the ERIP. The relators further sought a

temporary restraining order to enjoin the BOCC from continuing to violate R.C. 145.297.

{¶ 5} The trial court granted the temporary restraining order. In January 2010, the relators filed an amended complaint seeking a writ of mandamus to compel the BOCC to allow SED employees eligible for early retirement into the ERIP.

{¶ 6} The matter proceeded to a hearing before the trial court. The trial court denied the relators' motions for preliminary and permanent injunctive relief and the writ of mandamus but granted declaratory judgment in favor of the relators, finding that the BOCC acted unlawfully and violated R.C. 145.297 when it excluded SED employees from participating in the ERIP.

{¶ 7} The BOCC appealed and raises the following four assignments of error for our review:

I.    The court erred in finding that relators had standing for a taxpayers suit.

II.   The court erred in granting a temporary restraining order.

III.  The court erred in finding that appellants illegally excluded relators from the early retirement incentive plan.

IV.   Relators failed to exhaust their administrative remedies.[1]

### Standing

{¶ 8} In the first assignment of error, the BOCC argues that the trial court erred in finding that the relators had standing to bring a taxpayer action. R.C. 309.12 provides that the county prosecutor may bring suit on behalf of the public to prevent the execution of a contract entered in contravention of the law. R.C. 309.13 provides that a taxpayer has standing to pursue the same action when the taxpayer's aim is to benefit the county public as if the suit had been brought by the prosecuting attorney. Standing to bring the lawsuit, however, is not conferred by R.C. 309.13 unless the taxpayer can demonstrate that the prosecuting attorney has been contacted in writing, has been requested to act on the public's behalf, and has failed to act.

{¶ 9} The relators' attorney sent a taxpayer-demand letter to the Cuyahoga County prosecutor, requesting that he "apply to a court of competent jurisdiction to recover, for the use of the County, all public moneys misapplied or illegally drawn or withheld from the County treasury to fund the [BOCC's ERIP], or in the alternative, compel the Commissioners to extend the ERIP to employees of the [SED], and further require the Commissioners to allow ample time for any of

---

1.  The relators filed a notice of cross-appeal, but we dismissed the cross-appeal as untimely filed.

those employees to apply for and receive benefits of the ERIP." The prosecutor responded, declining to file suit, stating that "all actions associated with the ERIP have been done in accordance with law." The relators then filed their lawsuit.

{¶ 10} The BOCC argues that the relators do not have standing to bring a taxpayers' lawsuit because they are unable to show that the action complained of has affected the relators' pecuniary interests differently than the interests of the general taxpaying public. To support its position, the BOCC cites *State ex rel. Masterson v. Ohio State Racing Comm.* (1954), 162 Ohio St. 366, 55 O.O. 215, 123 N.E.2d 1. In *Masterson,* the Ohio Supreme Court held that "[i]n the absence of statutory authority, a taxpayer lacks legal capacity to institute an action to enjoin the expenditure of public funds unless he has some special interest therein by reason of which his own property rights are placed in jeopardy." Id. at paragraph one of the syllabus. The BOCC maintains that the relators failed to present any evidence that they have a special interest different from the taxpaying public. We find that BOCC's reliance on *Masterson* is misplaced. More recently, the Ohio Supreme Court has held that "[a] taxpayer action is properly brought only when the right under review in the action is one benefitting the public." *State ex rel. Fisher v. Cleveland,* 109 Ohio St.3d 33, 2006-Ohio-1827, 845 N.E.2d 500, ¶ 10. See *State ex rel. White v. Cleveland* (1973), 34 Ohio St.2d 37, 63 O.O.2d 79, 295 N.E.2d 665, paragraph one of the syllabus; *State ex rel. Caspar v. Dayton* (1990), 53 Ohio St.3d 16, 20, 558 N.E.2d 49.

{¶ 11} "[A] taxpayer has standing to enforce a public right, regardless of private or personal benefit." *Cleveland ex rel. O'Malley v. White,* 148 Ohio App.3d 564, 2002-Ohio-3633, 774 N.E.2d 337, ¶ 45. That being said, when the taxpayer's aim is merely for his own benefit, no public right exists, and a taxpayer action cannot be maintained. Id. at ¶ 46. See also *State ex rel. Fisher v. Cleveland,* Cuyahoga App. No. 83945, 2004-Ohio-4345, 2004 WL 1846124, affirmed, 109 Ohio St.3d 33, 2006-Ohio-1827, 845 N.E.2d 500. In *O'Malley,* a union sued to enjoin the city from using non-electricians to perform work on a construction project. We found that since there was full compliance with the bid procedures and public safety was not a true concern, no public right was at issue; at most, the union was protecting its members' interests in performing the work themselves. Thus, the plaintiff union lacked standing to pursue the action. But in *Fisher,* we found that city firefighters had standing to bring a taxpayer action challenging the city's requirement that firefighters submit income tax returns as an initial part of residency investigations. We held that despite the firefighters' private interests in the outcome of the litigation, the relief they sought inured to the benefit of the public. "[B]ecause employees of the city must be residents, a requirement that employees submit tax returns as proof of their residency

directly affects a substantial class of city residents [and] the city's blanket requirement that employees disclose private personal and financial information in order to continue employment must be deemed an abuse of corporate power, not merely a violation of individual rights." *Fisher*, 2004-Ohio-4345, 2004 WL 1846124, at ¶ 20. In affirming *Fisher*, the Ohio Supreme Court held that "[a] taxpayer action may exist when the ability to obtain or continue public employment is implicated by the alleged abuse of the municipal corporate power." 109 Ohio St.3d 33, 845 N.E.2d 500, at paragraph one of the syllabus. The court noted:

> [T]he interests of the people of Cleveland are implicated because they are voters. Relators' action has the potential (if the city appellants are believed) to eviscerate the ability of the commission to effectively investigate employee-residency issues. Second, residency is a threshold issue for municipal employment by Cleveland. As potential employees, the public is directly affected by the rule itself.
>
> Additionally, the records sought are being used as part of a civil-service-residency-examination process for which mandatory compliance is required to *continue* employment. A failure to successfully complete the process (for which the tax returns at issue are sought) can result in a termination of public employment. The public has an interest in seeing the continued employment of firefighters and police officers whom it has trained with taxpayer dollars and who have gained invaluable experience in their community.

Id. at ¶ 16–17.

{¶ 12} In *Fisher*, the challenged practice affected all existing firefighters' ability to continue their employment with the city as well as all potential citizens who may seek such employment. Cf. *State ex rel. Simeone v. Niles*, Trumbull App. No. 2008–T–0059, 2008-Ohio-7000, 2008 WL 5428214.

{¶ 13} In the case at bar, we find that notwithstanding any personal benefit to the relators, their lawsuit benefits the public. The interests of the citizens of Cuyahoga County are implicated because they are voters and the BOCC's action in excluding the SED from the ERIP, according to the BOCC, was to offer early retirement instead of laying off employees and eliminating jobs. Savings to county taxpayers is something that affects the entire county, not just the relators. And, as in *Fisher*, the challenged practice affected all county employees, present and future, because it allowed the BOCC to choose which employees it was going to offer the early retirement benefits to.

{¶ 14} Moreover, the BOCC itself admitted to the trial court that the lawsuit benefited more than just the relators. During the January 2010 hearing, counsel for the BOCC stated that "this is an issue [affecting] all employees throughout Cuyahoga County, not just the Teamsters. * * * All taxpayers in Cuyahoga

County are funding their ERIP, * * * their ERIP was originally instituted to save the taxpayers of Cuyahoga County money." Thus, based on the BOCC's own admission, the taxpayer lawsuit benefits more than just the relators.

{¶ 15} Therefore, the trial court did not err when it determined that relators had standing to bring this taxpayer action. The first assignment of error is overruled.

## Temporary Restraining Order

{¶ 16} In the second assignment of error, the BOCC argues that the trial court erred in granting the relators' temporary restraining order because the court failed to comply with Civ.R. 65(D). Civ.R. 65(D) provides that "every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding upon the parties to the action, their officers, agents, servants, employees, attorneys and those persons in active concert or participation with them who receive actual notice of the order whether by personal service or otherwise."

{¶ 17} The BOCC claims that the trial court's order did not properly set forth the reasons for its issuance, was not specific in its terms, and did not describe in any detail the acts to be restrained. But the temporary restraining order expired when the trial court granted the relators' declaratory relief. Consequently, there is no longer a controversy in dispute, and the BOCC's argument relating to the temporary restraining order is moot. As we stated in *Bambeck v. Catholic Diocese of Cleveland,* Cuyahoga App. No. 86894, 2006-Ohio-4883, 2006 WL 2692715, "[a]n appellate court is not required to render an advisory opinion on a moot question or abstract proposition or to rule on a question of law that cannot affect matters at issue in a case." Id. at ¶ 20, citing *State v. Bistricky* (1990), 66 Ohio App.3d 395, 584 N.E.2d 75.

{¶ 18} Therefore, the second assignment of error is overruled.

## The BOCC's ERIP

{¶ 19} In the third assignment of error, the BOCC argues that the trial court erred in finding that the BOCC violated R.C. 145.297 when it excluded relators from the ERIP.

{¶ 20} Since we are asked to review interpretation of a statute, which is a question of law, we employ a de novo review. *Riedel v. Consol. Rail Corp.,* 125 Ohio St.3d 358, 2010-Ohio-1926, 928 N.E.2d 448, ¶ 6, citing *State ex rel. Cleveland v. Cornell,* Cuyahoga App. No. 84679, 2005-Ohio-1977, 2005 WL 982919.

{¶ 21} It is axiomatic that if the language of a statute is plain and unambiguous and conveys a clear and definite meaning, a reviewing court cannot resort to the rules of statutory interpretation. *Riedel*, citing *Ohio Dental Hygienists Assn. v. Ohio State Dental Bd.* (1986), 21 Ohio St.3d 21, 21 OBR 282, 487 N.E.2d 301.

{¶ 22} R.C. 145.297 governs retirement-incentive plans for individuals in the Public Employees Retirement System. The statute provides:

(A) As used in this section, "employing unit" means:

* * *

(3)(a) With respect to employees of a board of alcohol, drug addiction, and mental health services, that board.

(b) With respect to employees of a county board of developmental disabilities, that board.

(c) With respect to other county employees, the county or any county agency designated by the board of county commissioners.

(4) In the case of an employee whose employing unit is in question, the employing unit is the unit through whose payroll the employee is paid.

(B) An employing unit may establish a retirement incentive plan for its eligible employees. In the case of a county or county agency, decisions on whether to establish a retirement incentive plan for any employees * * * shall be made by the board of county commissioners. * * *

* * *

(C) Any classified or unclassified employee of the employing unit who is a member of the public employees retirement system shall be eligible to participate in the retirement incentive plan established by the employee's employing unit * * *.

* * *

Participation in the plan shall be available to all eligible employees except that the employing unit may limit the number of participants in the plan to a specified percentage of its employees who are members of the public employees retirement system on the date the plan goes into effect.

{¶ 23} The BOCC argues that R.C. 145.297(A)(3)(c) gives it the authority to designate subordinate county agencies and offices as separate and distinct employing units. In other words, the BOCC claims that the statute allows it to classify the SED as a separate employing unit and therefore to separate it from other units in determining which units to offer the ERIP option. As the trial court noted: "The issue * * * centers on whether [the BOCC] could lawfully exclude a group of employees from participating in its ERIP outside of the express procedures for restricting participation in an ERIP contained in R.C.

145.297(C)(3) by defining 'employing unit' in conflict with the definition of 'employing unit' announced in R.C. 145.297(A)."

{¶ 24} As stated above, R.C. 145.297(B) provides that "[a]n employing unit may establish a retirement incentive plan for its eligible employees." As the statute reads, the employing unit is the county or any county agency designated by the board of county commissioners. R.C. 145.297(A)(3)(a) through (c). "In the case of an employee whose employing unit is in question, the employing unit is the unit through whose payroll the employee is paid." R.C. 145.297(A)(4).

{¶ 25} In this case, the BOCC offered the ERIP to all eligible county employees except SED employees. In fact, the BOCC named the subordinate employing unit the "BOCC, excluding the SED." But we find merit to the SED's claim that the "BOCC, excluding the SED" is not a county or a county agency. And in order for the BOCC to enter into a lawful ERIP, there must be an employing unit that is either a county or a county agency.

{¶ 26} By operation of law, the SED is a department created and supervised by the BOCC. R.C. 6117.01(C). SED employees are paid through the BOCC's payroll, and the BOCC approves collective-bargaining agreements and other personnel actions, including suspensions and discharges of SED employees. Moreover, the trial court record shows an e-mail sent from the county's director of human resources opining that the SED is a subdivision of the BOCC and indicating that the SED would be required to follow whatever plan the BOCC implemented.

{¶ 27} As noted by the relators, if the BOCC had wanted to limit the number of participants in the ERIP, the Board could have done so by limiting the number of participants to a specified percentage of its employees who are members of the Public Employees Retirement System on the date the ERIP went into effect. R.C. 145.297(C)(3).

{¶ 28} Thus, we find that the BOCC failed to comply with R.C. 145.297 when it designated "Cuyahoga County, excluding Sanitary Engineering" as the subordinate employing unit. Pursuant to R.C. 145.297(A)(3)(c), the BOCC should have designated the entire BOCC as the employing unit and included the SED in the ERIP. See R.C. 145.297(C).

{¶ 29} Therefore, we conclude that the trial court correctly granted declaratory judgment in favor of the relators. Accordingly, the third assignment of error is overruled.

### Exhaustion of Administrative Remedies

{¶ 30} In the fourth assignment of error, the BOCC argues that relators should have exhausted their administrative remedies by filing an administrative appeal under R.C. Chapter 2506 before initiating the underlying action.

{¶ 31} The Ohio Supreme Court has established that "prior to seeking court action in an administrative matter, the party must exhaust the available avenues of administrative relief through administrative appeal." *Noernberg v. Brook Park* (1980), 63 Ohio St.2d 26, 29, 17 O.O.3d 16, 406 N.E.2d 1095, citing *State ex rel. Lieux v. Westlake* (1951), 154 Ohio St. 412, 43 O.O. 343, 96 N.E.2d 414. In *Karches v. Cincinnati* (1988), 38 Ohio St.3d 12, 17, 526 N.E.2d 1350, the Ohio Supreme Court noted that two exceptions to the exhaustion of administrative remedies rule exist: "First, if there is no administrative remedy available which can provide the relief sought, or if resort to administrative remedies would be wholly futile, exhaustion is not required. Second, exhaustion of remedies is unnecessary when the available remedy is onerous or unusually expensive." (Citations omitted.)

{¶ 32} We find that the relators were not required to exhaust administrative remedies because the relators were excluded from participating in the ERIP; thus, any attempt to go through an administrative process would have been futile. Moreover, the relators filed a taxpayer action pursuant to R.C. 309.13.

{¶ 33} Therefore, the fourth assignment of error is overruled.

{¶ 34} Accordingly, judgment is affirmed.

Judgment affirmed.

KILBANE, A.J., concurs.

COONEY, J., dissents.

COLLEEN CONWAY COONEY, Judge, dissenting.

{¶ 35} I respectfully dissent. As the majority correctly states, when "there is no longer a controversy in dispute," the matter is moot. I find the fourth assignment of error dispositive because relators' failure to exhaust administrative remedies in a timely manner has rendered this appeal an academic exercise and seeks an advisory opinion. Therefore, I would reverse the trial court's decision.

{¶ 36} The ERIP was announced by BOCC resolution in November 2008. The enrollment period was set from January 15, 2009, to January 14, 2010.

{¶ 37} In November 2008, shortly after the ERIP was announced, a grievance was filed on behalf of "the employees of the Cuyahoga County Sanitary Engineer's Office" pursuant to the ERIP's grievance procedure. The grievance challenged the BOCC's decision to exclude the SED from participating in the ERIP. A hearing was held before the county administrator, James McCafferty. Fifteen SED employees attended the hearing. Four bargaining-unit members attended the hearing, including Lesh, one of the relators in the instant case. McCafferty issued a decision stating, "Based on the grievance request and

subsequent proceedings held on January 9, 2009, I have denied the grievance request. Therefore, the County Sanitary Engineer's agency will not be able to participate in the ERIP." No R.C. Chapter 2506 appeal was pursued to challenge this decision.

{¶ 38} The relators' attorney sent a taxpayer-demand letter to the county prosecutor in December 2009, just weeks before the ERIP ended. The BOCC correctly argues that relators should have exhausted their administrative remedies by filing an administrative appeal under R.C. 2506. McCafferty issued his decision denying the grievance request on January 20, 2009, which was at the very beginning of the ERIP enrollment period. Relators did nothing to pursue their grievance over exclusion from ERIP until late December 2009, when they contacted the prosecutor. The ERIP was closing on January 14, 2010, one week after relators filed their amended complaint.

{¶ 39} The Ohio Supreme Court has firmly established that "prior to seeking court action in an administrative matter, the party must exhaust the available avenues of administrative relief through administrative appeal." *Noernberg v. Brook Park* (1980), 63 Ohio St.2d 26, 29, 17 O.O.3d 16, 406 N.E.2d 1095, citing *State ex rel. Lieux v. Westlake* (1951), 154 Ohio St. 412, 43 O.O. 343, 96 N.E.2d 414. "The purpose of the [exhaustion] doctrine ' * * * is to permit an administrative agency to apply its special expertise * * * in developing a factual record without premature judicial intervention.' " *Nemazee v. Mt. Sinai Med. Ctr.* (1990), 56 Ohio St.3d 109, 111, 564 N.E.2d 477, quoting *S. Ohio Coal Co. v. Donovan* (C.A.6, 1985), 774 F.2d 693.

{¶ 40} In the instant case, the BOCC offered the ERIP to all county agencies except the SED. The ERIP contained a grievance procedure for any employee determined ineligible to participate. It provided that ineligible employees could file a grievance in writing within seven days of the employee's receipt of notice of ineligibility. In November 2008, a grievance was filed on behalf of some of the employees of Cuyahoga County's SED pursuant to the ERIP's grievance procedure. A grievance hearing was held on January 9, 2009, before McCafferty. Lesh and three other bargaining-unit members attended the hearing. On January 20, 2009, McCafferty issued a decision stating that SED employees are not eligible to participate in the ERIP. No appeal under R.C. Chapter 2506 was pursued to challenge this decision.

{¶ 41} I find the Ohio Supreme Court's reasoning in *Clagg v. Baycliffs Corp.* (1998), 82 Ohio St.3d 277, 695 N.E.2d 728, persuasive on this issue. *Clagg* involved an analogous situation in which property owners brought an action for a declaratory judgment seeking a definition of their rights in a roadway and requested a permanent injunction preventing alteration of the road. The trial court determined that the property owners were required to exhaust their

administrative remedies by appealing the regional planning commission's decision to approve the replat.

{¶ 42} The Ohio Supreme Court found that the regional planning commission was the appropriate governing body to determine whether a change in the easement is proper under R.C. 711.24. Id. at 280. Since the regional planning commission determined that property owners were not injuriously affected by the proposed change to the roadway, the property owners should have appealed under R.C. 2506.01. Id. The *Clagg* court further found that when parties fail to exhaust their administrative remedies, declaratory and injunctive relief will be denied. Id. at 281. See also *Buchholtz v. Childers*, Ottawa App. No. OT–06–016, 2007-Ohio-870, 2007 WL 625814 (the court, relying on *Clagg*, found that appellants should have appealed the regional planning commission's decision under R.C. Chapter 2506).

{¶ 43} Similarly, I would find that relators failed to exhaust their administrative remedies when they did not appeal McCafferty's decision denying their grievance in January 2009. Relators waited until December 30, 2009, to file their declaratory-judgment action, when they should have pursued a grievance and appealed McCafferty's decision under R.C. Chapter 2506. A timely appeal early in 2009 would have enabled a prompt review of their claim before the ERIP ended in January 2010. It is now 2011, and both the BOCC and ERIP no longer exist.

{¶ 44} Moreover, I would sustain the first assignment of error as well and find that relators have no standing to pursue this case as a taxpayer action. When the taxpayer's aim is merely for his own benefit, no public right exists. *Cleveland ex rel. O'Malley v. White*, 148 Ohio App.3d 564, 2002-Ohio-3633, 774 N.E.2d 337, ¶ 46, citing *State ex rel. Caspar v. Dayton* (1990), 53 Ohio St.3d 16, 558 N.E.2d 49.[2] In the instant case, there is no question that Lesh is an employee of the SED and that the Teamsters represents SED employees. Thus, relators have a personal and private interest in seeking a determination that SED employees should be allowed to participate in the ERIP. See *O'Malley* (in which this court held that electrical workers union lacked standing to bring a taxpayer action when the union members have only a personal interest in the matter and no public rights are being protected) and *State ex rel. Brewer–Garrett Co. v. Metrohealth Sys.*, Cuyahoga App. No. 87365, 2006-Ohio-5244, 2006 WL 2831017, ¶ 48 in which this court also held that when the taxpayer's goal in filing a lawsuit

2. The Ohio Supreme Court in *Caspar* found that a police officers' action to compel fringe benefits and the right to vacation pay did not involve enforcement of a public right. Id. at 20.

is for his own benefit, no public rights exist and a taxpayer action cannot be maintained.

{¶ 45} Because no public rights are being protected through this taxpayer suit and relators' only goal is the personal benefit to ERIP-ineligible employees, I would find that relators lack standing to bring this taxpayer action under R.C. 309.13. The goal of the ERIP was to save the county money. Including SED employees in the eligibility pool was determined to cost the county money, clearly not in the public's best interest. And as I stated earlier, the entire matter is now moot. Therefore, I would reverse the trial court's decision.