DECISION AND JUDGMENT ENTRY
{¶ 1} This appeal is from the May 18, 2006 consolidated judgment of the Erie County Court of Common Pleas, which granted summary judgment to appellee, *Page 2 
Mitiwanga Park Company. Upon consideration of the assignments of error presented by all of the appellants, we reverse the decision of the lower court. Appellants, Sandy Beach Ltd. and Connie Holland, assert the following assignments of error on appeal:
 {¶ 2} "I. TRIAL COURT ERRED AS A MATTER OF LAW IN HOLDING THAT THE BY-LAWS OF MITIWANGA PARK COMPANY WERE VALID AND ENFORCEABLE RESTRICTIONS AGAINST APPELLANTS' PROPERTY.
 {¶ 3} "I.A. THE TRIAL COURT ERRED AS A MATTER OF LAW IN HOLDING THAT MITIWANGA PARK COMPANY'S BY-LAWS ARE VALID AND APPLICABLE TO APPELLANTS' SANDY BEACH AND HOLLAND'S PROPERTIES BECAUSE THEY HAD ACTUAL, CONSTRUCTIVE OR INQUIRY NOTICE OF THE BY-LAW.
 {¶ 4} "I.B. THE MITIGAWA PARK COMPANY BY-LAWS/RESTICTIONS WERE NOT VALIDLY CREATED TO ATTACH TO APPELLANTS' PROPERTIES, AND MITIWANGA PARK COMPANY IT HAS NO AUTHORITY TO COLLECT MEMBERSHIP DUES, FINES OR PENALTIES FROM APPELLANTS OR TO LEVY ANY ASSESSMENTS AGSINT APPELLANTS.
 {¶ 5} "II. THE TRIAL COURT ERRED AS MATTER OF LAW WHEN IT HELD THAT THE DOCTRINE OF UNJUST ENRICHMENTE PRECLUDES APPELLANTS' [SIC] FROM DISALLOWING THE BY-LAWS AND ASSESSMENTS FOR THE UPKEEP AND MAINTENANCE OF MITIWANGA PARK PROPERTY. *Page 3 
 {¶ 6} "III. THE TRIAL COURT ERRED IN DENYING A DECLARATORY JUDGMENT TO SANDY BEACH AND HOLLAND FINDING THAT THEY POSSESS AN EASEMENT TO THE USE OF THE AVENUES AND PARK IN MITIWANGA SUBDIVISION, AND ENJOINING MITIWANGA PARK COMPANY FROM DENYING THEIR USE OF THESE AREAS.
 {¶ 7} "IV. THE TRIAL COURT ERRED AS A MATTER OF LAW IN DENYING APPELLANTS SANDY BEACH AND HOLLANDS [SIC] CLAIMS FOR PUNITIVE DAMAGES AND/OR ATTORNEY FEES."
 {¶ 8} Appellant, Dezso Sablack, asserts the following assignments of error on appeal:
 {¶ 9} "1. The trial court erred in holding that the Appellee could impose restrictions upon the use of, and assessments and fines upon the owners and subsequent grantees of, real property, through the unilateral adoption of corporate bylaws, when the corporation at issue was not formed until thirteen years after the subdivision containing the subject parcels was platted, and had no ownership interest in the real property in question at the time the bylaws were adopted, to which the present owner and his predecessors in interest had taken in fee simple, and when no record of any restriction on the use or enjoyment of that property appeared either in the deed to, or in the chain of title of, the property allegedly burdened.
 {¶ 10} "2. The trial court erred in holding that the subsequent recording of such bylaws upon the plat of a subdivision, was sufficient to allow such a corporation to *Page 4 
impose restrictions upon the use of, and assessments and fines upon the owners and subsequent grantees of such real property, when the bylaws in question were unilaterally adopted by a corporation with no ownership interest in the parcels in question, and do not appear in the chain of title of those properties.
 {¶ 11} "3. The trial court erred in holding that the adoption and subsequent recording of such bylaws could authorize the corporation in question to limit, condition or deny access to the common areas and rights of way within a subdivision by the owner, in fee simple, of a parcel within that subdivision, when the original plat of that subdivision, recorded prior to the formation of the corporation in question, vouchsafed to his predecessors in title a perpetual easement to those common areas and rights of way, which easement has at no time since been conveyed, transferred, revoked or otherwise extinguished.
 {¶ 12} "4. The trial court erred in holding that Appellant Dezso Sablack was bound to adhere to the restrictions, and was subject to the assessments and fines imposed under the bylaws in question, absent clear and convincing evidence that he had actual notice of those bylaws when he acquired property in the Mitiwanga subdivision.
 {¶ 13} "5. The trial court erred in holding that the doctrine of unjust enrichment required Appellant Dezso Sablack to pay the assessments levied against him by the Appellee."
 {¶ 14} Sandy Beach Apt. Ltd., an Ohio limited liability company (hereinafter Sandy Beach), Connie Holland, and Dezso Sablack are lot owners within the Mitiwanga *Page 5 
Subdivision in Erie County, Ohio. In the year 2000, Sandy Beach (owner of Lots No. 44, 45, and 46), Sablack (owner of Lots No. 49 and 94), and Holland (owner of Lots No. 15, 28, 29) all filed separate actions against Mitiwanga Park Company (hereinafter Mitiwanga), a non-profit Ohio corporation which governs and maintains the subdivision.
 {¶ 15} Holland is the sole member of the Sandy Beach limited liability company. She first brought suit in 1994 (individually and as a general partner for and on behalf of Sandy Beach) against Mitiwanga and several individuals. That case was voluntarily dismissed twice and re-filed. In her re-filed action, Holland sought declaratory judgment and injunction regarding the validity and enforceability of the by-laws and her rights under her deed. She also alleged other causes of action which were resolved in favor of Mitiwanga on summary judgment in 2003. In 2005, her action was consolidated with the case filed by Sandy Beach in 2000.
 {¶ 16} Sablack sought declaratory judgment and an injunction against Mitiwanga asserting similar claims to Holland's claims. Mitiwanga filed a counterclaim asserting an implied contract and money due on an account. Sablack's case was consolidated with the Sandy Beach action on January 28, 2005.
 {¶ 17} Sandy Beach sought similar declaratory judgment, injunction, and other relief against Mitiwanga. Sandy Beach asserted that it had a right to use the common areas of the subdivision; that Mitiwanga could not impose land use restrictions set forth in the Mitiwanga by-laws upon Sandy Beach; that Sandy Beach could not be restricted from voting in Mitiwanga; and that Mitiwanga could not impose discriminating *Page 6 
assessments against Sandy Beach. Mitiwanga filed a counterclaim against Sandy Beach and a third-party complaint against Holland alleging a claim for unpaid dues and fines and penalties assessed by Mitiwanga pursuant to the by-laws.
 {¶ 18} After consolidation of all three cases, the court noted that the key issue in the consolidated case was whether Mitiwanga's by-laws were valid and enforceable against appellants. Resolution of this issue would also resolve the other related issues raised by the parties, including: whether appellants are entitled to be voting members of Mitiwanga; whether Mitiwanga can impose restrictions upon the use of real property within the subdivision pursuant to the by-laws; whether Mitiwanga could assess fees for violations of the by-laws; and whether Mitiwanga could limit access to the common areas and right-of-ways in the subdivision pursuant to the terms of by-laws.
 {¶ 19} All of the parties in the consolidated case moved for summary judgment. On May 18, 2006, the trial court granted summary judgment in favor of Mitiwanga Park. Appellants then sought an appeal from that decision to this court.
 {¶ 20} The following are the undisputed facts in this case. The original plat of the Mitiwanga Subdivision in Vermilion, Ohio, was recorded May 26, 1902. Charles S. Aves, Trustee, was the prior owner of the property which would become the Mitiwanga Subdivision. The original plat stated that: "* * * the Avenues and Park therein shown and contained are given and granted as a perpetual right of way for the right and convenience of the several Sub-Divisions." *Page 7 
 {¶ 21} Mitiwanga was incorporated in 1915. Since the by-laws were recorded on October 7, 1987, Mitiwanga has attempted to control the use of the common areas and private lots and to impose assessments and fines related to their use through the by-laws. An amended plat was filed on November 3, 1988, which added the following notation: "FOR PROPOSED NEW BY-LAWS SEE D.V. 537 Pg. 915 For Amend to By-laws, See OR Book 59 Pg. 538, OR Bk. 89 — Pg. 161 — OR Bk 169 — Pg. 129."
 {¶ 22} Mitiwanga claims title to the common areas in the Mitiwanga Subdivision. The common areas are alleged to include all of the property not owned by individual owners, including roads, park area, lakefront, beach, etc. Mitiwanga claims title by a deed from John and Mabel Laylin, dated 1948, and a favorable resolution of a quiet title action against the owner of Lot 79 regarding the hillside and sand beach. However, Mitiwanga acknowledges the rights of lot owners to use the avenues and park within the subdivision.
 {¶ 23} Since 1987, Mitiwanga claims a right under its by-laws to impose restrictions on the use of the lots and fines for non-compliance. Mitiwanga consistently denied throughout this litigation that the by-laws are interests in land, i.e., restrictive covenants or encumbrances that run with the land. Rather, Mitiwanga argues that the lot owners are subject to the by-laws because they voluntarily purchased a lot in the subdivision with actual or constructive knowledge of their existence and automatically became a member of Mitiwanga. It contends that the by-laws are merely contractual restrictions on the use of the land. However, Mitiwanga has also asserted that the deeds *Page 8 
to the lots indicate that the title to the land is subject to "restrictions of record," which includes the by-laws, and that appellees had actual, constructive, or inquiry notice of the recorded by-laws.
 {¶ 24} In a letter sent to property owners in the subdivision in 1999, the Mitiwanga Board President acknowledged that the individual property deeds in the subdivision do not include a provision binding the property to the Mitiwanga by-laws. Therefore, the Mitiwanga board sought to have every property owner execute a new deed making their property subject to the current and future by-laws of Mitiwanga. Mitiwanga asserts that this letter did not apply to properties owned by appellants who were on notice that the bylaws existed.
 {¶ 25} Sablack is the owner of Lot Nos. 49 and 94. He purchased Lot. No. 94 in 1978. He purchased Lot No. 49 in 1992. The by-laws did not exist when he purchased the first lot in 1978, but he was aware in 1992 that Mitiwanga assessed fees on the lots.
 {¶ 26} Holland purchased Lot No. 15 in 1989. Her deed noted that the property was subject to the "easements, recorded, unrecorded or prescriptive; licenses; restrictions of record; any restrictions as to the use and occupancy imposed by any governmental unit; and all unpaid taxes and assessments." Holland acquired Lot Nos. 28 and 29 in 1994, subject to the same encumbrances. The by-laws are not indexed in the chain of title to her lots and there is no recorded document signed by Holland or her predecessors agreeing to be bound by the by-laws. *Page 9 
 {¶ 27} Holland subsequently purchased Lots No. 44, 45, and 46, in 1992 and transferred the lots to Sandy Beach in 1998. Holland, as grantor, conveyed the property "free from all encumbrances whatsoever EXCEPT any mortgages of record which Grantee assumes and agrees to pay, easements, recorded, unrecorded or prescriptive; licenses; restrictions of record; any restrictions as to the use and occupancy imposed by any governmental unit and taxes and assessments, both general and special* * *." Mitiwanga's name does not appear in the chain of title for Lots 44, 45, or 46 either. Furthermore, none of the deeds to these lots contain an easement to Mitiwanga regarding these common areas. Neither Sandy Beach nor Holland ever agreed to make these lots subject to the by-laws of Mitiwanga.
 {¶ 28} Initially, Holland was an active member of Mitiwanga, participated in the enforcement of the by-laws, and voted on matters involving the assessment of fines, assessments, improvements, compliance, guidelines, and dues. She later objected to the assessments and was terminated as a member of Mitiwanga in 1994 because she would not pay the assessments. Sandy Beach expressly declined to become a member of Mitiwanga and does not receive any services from Mitiwanga.
 {¶ 29} In 1994, Mitiwanga informed Holland that neither Sandy Beach and its tenants nor Holland may use the common areas of the subdivision since they are not members of Mitiwanga. Holland attempted to use the park in 1994 and was told to leave the premises. She attested that she had informed her tenants that they are not allowed to use the common areas. However, the Vice President of the Board of Trustees of *Page 10 
Mitiwanga attested that he had seen advertisements for rental units at Sandy Beach which have contained references to beach access. Furthermore, he attested that he had personally seen tenants use the beach, tennis courts, parking facilities, and roads from time-to-time.
 {¶ 30} Mitiwanga argued in its motion for summary judgment that the by-laws are valid and enforceable because the deeds to the lots gave the purchasers notice that the property would be subject to all "restrictions of record" and the by-laws were duly recorded. Holland and Sandy Beach were also bound by the by-laws because Holland had actual knowledge of the by-laws when she served on the board of Mitiwanga for nearly ten years and Sandy Beach had actual knowledge of the by-laws through its sole member, Holland, who was also its predecessor in title. Mitiwanga also argued that an implied-in-law contract existed between Mitiwanga and the subdivision lot owners because Mitiwanga maintained the common areas for the benefit of the lot owners. The failure of a lot owner to receive such benefits without an obligation to share in the cost of the maintenance would result in an unjust enrichment of the lot owner. Mitiwanga argues that had appellants not wanted to share in the cost of the upkeep and improvement of the common areas, they could have signed away their rights to use the common areas.
 {¶ 31} Both Sablack and Holland and Sandy Beach argued in their motions for summary judgment that Mitiwanga's by-laws are actually restrictive covenants which were not properly created and, therefore, are not enforceable against lot owners who do not agree to be bound by their provisions. They also argue that the notation on the *Page 11 
amended plat of the existence of Mitiwanga's by-laws is not a "restriction of record" because the by-laws were not properly recorded restrictive covenants within the chain of title. Holland and Sandy Beach also argue that they are not responsible for unpaid membership dues and various fines and penalties because: (1) Sandy Beach never was a member of Mitiwanga and Holland has not been a member since 1994; (2) they did not automatically become members when they purchased lots in the subdivision because the by-laws are not properly created restrictive covenants; and (3) there is no evidence of an implied contract binding Sandy Beach and Holland, which would entitle Mitiwanga to recovery under a quasi-contract theory. Furthermore, Sandy Beach and Holland argued that they were entitled to declaratory judgment that they possess a private easement to use the common areas of the subdivision based upon the original plat recorded for the subdivision.
 {¶ 32} In its Decision and Judgment Entry dated June 1, 2006, the trial court granted summary judgment to Mitiwanga on the issue of the validity and enforceability of Mitiwanga's by-laws. The trial court held first that Mitiwanga's by-laws are valid and enforceable against appellants. The court found that Sandy Beach had actual notice of the by-laws through the knowledge of its sole member, Holland, and constructive and inquiry notice because its deed noted that the property was subject to the restrictions of record and the by-laws were recorded prior to the purchase of the property by Sandy Beach. The court found that Holland was subject to the by-laws for the same reasons. The court found that Sablack had admitted actual knowledge at the time he purchased his *Page 12 
first lot in 1977 that the lots in the subdivision were subject to maintenance fees for the common areas. Furthermore, he had actual knowledge by 1994 when he purchased his second lot because the by-laws had been recorded prior to that time.
 {¶ 33} Second, the trial court held that appellants were liable under the doctrine of unjust enrichment from disavowing the by-laws and assessments imposed by Mitiwanga since they had derived benefit from the use of the common areas. Finally, the court held that Mitiwanga did not act contrary to law in the manner in which it assesses properties within the subdivision.
 {¶ 34} On appeal, we review the grant of summary judgment under a de novo standard of review. Advanced Analytics Labs., Inc. v. Kegler,Brown, Hill Ritter, 148 Ohio App.3d 440, 2002-Ohio-3328, ¶ 33. Therefore, applying the requirements of Civ.R. 56(C), we uphold summary judgment when it is clear "* * * (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." Harless v. Willis DayWarehousing Co. (1978), 54 Ohio St.2d 64, 66-67.
 {¶ 35} In their first assignment of error, Holland and Sandy Beach argue that the trial court erred as a matter of law when it found that Mitiwanga's by-laws were valid and enforceable. Likewise, in his first, second, and third assignments of error, Sablack *Page 13 
argues that the trial court erred in holding that the by-laws of Mitiwanga were valid and enforceable against him. We agree.
 {¶ 36} Appellee has never maintained that the by-laws are restrictive covenants probably because it is obvious that they were not properly created as such pursuant to common and statutory law. The owner of real property, who has adopted a general building scheme or plan for the development of a tract of property, has the right to restrain the use of one lot so long as the restrictions are for the benefit of the other lot owners, unless such restrictions are unreasonable, contrary to public policy, or unlawful. Dixon v. Van Sweringen Co. (1929), 121 Ohio St. 56,69-71 and Carranor Woods Property Owners' Assn. v. Driscoll (1957), 106 Ohio App. 95, 98-99. Such restrictions are binding upon subsequent grantees in equity generally because the purchaser had notice of the restriction by the filing of the original grantee's deed or the original plat governing the tract of land. Id. and R.C. 317.08 and R.C.5301.25(A).
 {¶ 37} In the case before us, the by-laws were created by Mitiwanga who never owned the lots at issue. Thus, the by-laws are not properly-created restrictive covenants. Mitiwanga acknowledged as much in its letter to subdivision lot owners in 1999. Nonetheless, appellee sought to use property concepts of actual and constructive notice to enforce the by-laws. In this regard, we find that the trial court erred as a matter of law. Notice of the existence of the by-laws, whether constructive or actual, was irrelevant to their enforceability. *Page 14 
 {¶ 38} Furthermore, because the by-laws are not restrictive covenants, there is no statutory or common law principle that requires the subdivision lot owners to become a member of Mitiwanga and share in the cost of the maintenance of the common areas. Certainly, lot ownership can be a condition of membership, but membership cannot be mandated without a restrictive covenant. Johnson's Island Property Owners' Assoc.v. Nachman (Nov. 19, 1999), 6th Dist. No. OT-98-043, at 5.
 {¶ 39} Accordingly, we find the first assignment of error of Holland and Sandy Beach and the first, second, and third assignments of error of Sablack well-taken.
 {¶ 40} In their second assignment of error, Holland and Sandy Beach contend that the trial court erred as a matter of law when it held that they were liable for the upkeep of the common areas under the doctrine of unjust enrichment. Sablack presents the same argument in his fifth assignment of error.
 {¶ 41} Mitiwanga does not argue not that appellants were responsible for the maintenance costs under a restrictive covenant. Rather, it argues that it is entitled to reimbursement under the equitable theory of unjust enrichment. The trial court agreed and determined that the lot owners impliedly agreed to share in the cost of such upkeep because they had knowledge of the by-laws and the assessments for maintenance of the common areas and derived a benefit from such maintenance.
 {¶ 42} Unjust enrichment occurs when a party retains money or benefits which in justice and equity belong to another. Rice v. Wheeling DollarSavings Trust Co. (1951), 155 Ohio St. 391, paragraph three of the syllabus. It is a quasi-contract theory of *Page 15 
recovery which arises when a benefit has been conferred by one party upon another, the other person has knowledge of the benefit, and the circumstances are such that it would be unjust for the other person to retain the benefit without compensation. Hambleton v. R.G. BarryCorp. (1984), 12 Ohio St. 3d 179, 183, and Hummel v. Hummel (1938),133 Ohio St. 520, 525.
 {¶ 43} In the case before us, the finding of unjust enrichment is inconsistent with the court's finding that appellants were required by the by-laws and assessments to share in the cost of the maintenance of the common areas. A grantor can require each lot owner to share in the cost of maintenance of the common areas by way of a restrictive covenant. That was not done in this case. Furthermore, if the parties had a contractual agreement, Mitiwanga had a claim in contract to recover for the maintenance costs it expended and did not need to resort to an equitable recovery. However, where a party does not agree to sharing the costs of maintaining the common areas, there is no basis for making them pay for such maintenance that was done. Mitiwanga proceeded, without an agreement, to maintain the common areas and then attempted to force appellants to pay what Mitiwanga determined to be their share of the cost. Furthermore, Mitiwanga told Holland and Sandy Beach that they were not entitled to use the common areas. A finding of unjust enrichment under such circumstances would not be equitable and is contrary to law.
 {¶ 44} Holland's and Sandy Beach's second assignment of error and Sablack's fifth assignment of error are well-taken. *Page 16 
 {¶ 45} In their third assignment of error, Holland and Sandy Beach argue that the trial court erred by not granting them a declaratory judgment that they have a right to use the common areas. In his third assignment of error, Sablack argues that the trial court erred by denying him a declaration that he had an easement to use the common areas unburdened by the by-laws.
 {¶ 46} The trial court never addressed the issue of the property rights of Holland, Sandy Beach, and Sablack. Because the trial court held that the by-laws were valid and enforceable, it did not address the declaratory judgment actions of Holland, Sandy Beach, and Sablack. Having reversed the trial court on this issue, we find the third assignments of error of Holland, Sandy Beach, and Sablack well-taken and remand this case for the trial court to declare the rights of the parties under their deeds.
 {¶ 47} In their fourth assignment of error, Holland and Sandy Beach argued that the trial court erred by denying their claim for punitive damages and attorney fees. Holland and Sandy Beach asserted that they were entitled to punitive damages and attorney fees because Mitiwanga acknowledged in its letter to the subdivision lot owners that the by-laws were not enforceable and yet proceeded in bad faith to enforce the bylaws, which compelled appellants to file suit to protect their property rights. Appellants contend that such action constitutes frivolous conduct under R.C. 2323.51(A)(2)(a)(ii) and (iii). The trial court did not reach this issue because of its holding that the by-laws were valid and enforceable against appellants. Because of our reversal of the trial court's grant of summary judgment, the trial court must now address this issue on remand. *Page 17 
 {¶ 48} The fourth assignment of error of Holland and Sandy Beach is well-taken.
 {¶ 49} Having found that the trial court did commit error prejudicial to appellants, the judgment of the Erie County Court of Common Pleas is reversed. This case is remanded to the lower court for further proceedings to declare the rights of appellants as to the common areas and determine whether they were entitled to an award of punitive damages and attorneys' fees. Appellee is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Erie County.
JUDGMENT REVERSED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Peter M. Handwork, J., Arlene Singer, J., Thomas J. Osowik, J., CONCUR. *Page 1